
**Terri C. HARDY, widow of Bryce W. Hardy, Plaintiff and Respondent,**

v.

**BENEFICIAL LIFE INSURANCE COMPANY, a Utah corporation, Defendant and Appellant.**

No. 880464–CA.

Court of Appeals of Utah.

Jan. 25, 1990.

George J. Romney (argued), David J. Holdsworth, Salt Lake City, for defendant-appellant.

David Eckersley (argued), Donald R. Schow, Salt Lake City, for plaintiff-respondent.

Before BENCH, BILLINGS and GREENWOOD, JJ.

GREENWOOD, Judge:

Appellant Beneficial Life Insurance Company (Beneficial Life) appeals a final judgment awarding Terri C. Hardy insurance benefits for the accidental death of her husband, Bryce W. Hardy (Hardy). We affirm.

This case was presented to the trial court on stipulated facts, which are summarized below. Hardy died on September 10, 1981, as a result of narcotic intoxication. Prior to his death, Hardy suffered from and had received treatment for drug dependency and abuse. From 1973 to 1976, he used and abused Darvon. He was repeatedly warned by his physician that he was using excessive amounts of Darvon. In March 1977, Hardy attempted suicide by taking an overdose of Valium tablets and alcohol. By late 1977, Hardy was abusing controlled drugs including codeine, Tylenol 3, Darvon, Tylox, Percodan, and Valium. During 1981, Hardy, who was then suffering from back pain and internal disorders associated with a diseased pancreas, manipulated several doctors to obtain large quantities of prescriptions for drugs. In March 1981, a clinical social worker warned Hardy "that if he did not stop abusing and misusing drugs, he would end up killing himself." From March 23 to May 31, 1981, Hardy was hospitalized three times for treatment of drug dependency. During his treatment, Hardy admitted that he was addicted to Valium and Percodan. Doctor Robert Crist warned Hardy that "his continued misuse and abuse of drugs would be a life-shortening process and that he would be living on borrowed time." Dr. Crist further warned that "those who abuse and misuse drugs, in the manner which he had done, live very short lives and that few of those who continue to abuse and misuse

drugs to the degree that Bryce W. Hardy had done lived beyond the age of thirty." While hospitalized, Hardy told a nurse that he would rather be in the hospital for a while than dead.

Terri Hardy testified at trial that on September 9, 1981, the evening preceding Hardy's death, he did not appear anxious or depressed and he made no statements, oral or written, that he intended to commit suicide. She further testified that his activities were routine and included making preparations for the next day's work at his job, reading to his children, and watching television.

On the night of September 9, or the morning of September 10, 1981, Hardy took an undetermined amount of drugs including codeine, propoxyphene (Darvon), and trimethobenzamide (Tigan). The drugs were not prescribed by a physician for medical purposes. On the morning of September 10, 1981, Hardy, at the age of twenty-nine, died of drug overdose.

At the time of his death, Hardy was insured by Beneficial Life under the terms of two group policies. One provided benefits of $25,000 in the event of death regardless of cause and the other provided a benefit of $25,000 only in the case of accidental death. Terri Hardy is the named beneficiary of both policies. The benefits under the first policy were paid. This action relates only to the accidental death policy, which states that "[t]he Company will pay the sum for which application was made by the Insured upon receipt of due proof that the insured's death resulted, directly and independently of all other causes, from accidental bodily injury...."

The trial court concluded that Hardy's death was accidental because the stipulated facts did not "demonstrate that Mr. Hardy either intended or expected that his consumption of drugs would cause his death on September 10, 1981." Beneficial Life claims this conclusion is erroneous.

Because there is no dispute as to the facts, we address a purely legal question: under the stipulated facts was the death of Bryce from narcotic intoxication by acci-

dent within the meaning of the life insurance policy?

## STANDARD OF REVIEW

■ A trial court's conclusions of law are reviewed for correctness and are not given special deference. *Bountiful v. Riley,* 784 P.2d 1174 (1989); *Western Kane County Special Serv. Dist. No. 1 v. Jackson Cattle Co.,* 744 P.2d 1376, 1378 (Utah 1987). Further, an insurance policy is a form of contract and "[q]uestions of contract interpretation not requiring resort to extrinsic evidence are matters of law, and on such questions we accord the trial court's interpretation no presumption of correctness." *Zions First Nat'l Bank v. National Am. Title Ins.,* 749 P.2d 651, 653 (Utah 1988).

## ANALYSIS

■ The applicable test, adopted by the Utah Supreme Court in *Hoffman v. Life Ins. Co. of N. Am.,* 669 P.2d 410 (Utah 1983), in determining whether an event is accidental or not whether the result is foreseeable, but whether it was expected. The court stated: "Thus, since the common meaning of the term [accident] is defined in terms of whether the event was naturally and probably expected or anticipated by the insured, it is that definition which must be applied, and not one founded on foreseeability." *Id.* at 416 (citations omitted). The critical question in this case, therefore, is whether Hardy expected that the natural and probable result of his ingestion of drugs on the evening of September 9 or the morning of September 10, 1981, would be his imminent death.

By employing an "expectation" standard in determining if an event is accidental, *Hoffman* imposes a high threshold of likelihood of injury or death for an event to qualify as a nonaccident. "Expected" is a term that " 'implies a high degree of certainty.' " *Id.* (quoting *Webster's Third International Dictionary* (1976)). "The 'unexpected event' standard ... as to what constitutes an accident includes not only death resulting from conduct of the insured which is negligent, but also death resulting

from an insured's conduct which is reckless." *Id.* at 416–17.

Beneficial Life claims the death of Hardy was not an accident under the terms of the policy. Beneficial Life argues that the trial court erred by looking only to the events immediately preceding the death, in determining whether death was intended or expected. Beneficial Life insists that Hardy's death cannot be viewed in a vacuum; based on his long history of drug abuse and his knowledge of the threat of death from continued abuse, Hardy expected and intended to die on September 10, 1981, after he consumed the drugs.

We find that there is insufficient evidence that Hardy expected, with the high level of certainty required by *Hoffman,* that his ingestion of drugs on September 9 or 10, 1981, would lead to his immediate death. There is no evidence that Hardy intended to commit suicide: there was no note, his activities in the evening of September 9, 1981, apparently were routine and normal, and there was no indication of depression or abnormal behavior.

■ Further, we are not persuaded that Hardy's pattern of drug abuse and his knowledge of the risks involved is sufficient evidence under the *Hoffman* standard that he expected to die from his consumption of drugs on September 9 or 10, 1981. Admittedly, because Hardy knew that his continued abuse would result in death at some time, his act was reckless and indicated bad judgment. We cannot assume, however, that Hardy intended or expected to die on each occasion when he took drugs simply because he failed to heed the warnings of others that he should avoid taking narcotics. In fact, Hardy's own extensive experience with drug abuse raises the inference that he would not believe, with a high degree of certainty, that doing only

what he had been doing for some years would cause death on September 10, 1981.

Because the evidence does not show that Hardy expected to die on September 10, 1981, from his ingestion of drugs, we find that the trial court did not err in determining that Hardy's death was not accidental under the terms of the insurance policy. Our decision is consistent with the majority of jurisdictions that have faced this issue. Death from overdose, absent affirmative evidence that the insured intended death, is almost invariably treated as accidental. *See, e.g., O'Toole v. New York Life Ins. Co.,* 671 F.2d 913 (5th Cir.1982); *Minton v. Stuyvesant Life Ins. Co.,* 373 F.Supp. 33, 35 (D.Nev.1974); *Pilcher v. New York Life Ins. Co.,* 25 Cal.App.3d 717, 102 Cal.Rptr. 82, 87–88 (1972); *Russell v. Metropolitan Life Ins. Co.,* 108 Ill.App.3d 417, 64 Ill.Dec. 160, 162–64, 439 N.E.2d 89, 91–93 (1982); *Miller v. Continental Ins. Co.,* 40 N.Y.2d 675, 389 N.Y.S.2d 565, 566–67, 358 N.E.2d 258, 259–60 (1976); *Beckham v. Travelers Ins. Co.,* 424 Pa. 107, 225 A.2d 532, 535–37 (1976).[1]

Finally, we note a fundamental principle operative in this case: "any ambiguity or uncertainty in the language of an insurance policy must be resolved in favor of coverage. Also, since the policy is drawn by the insurer, ambiguities are construed against that party." *LDS Hosp. v. Capitol Life Ins. Co.,* 765 P.2d 857, 858 (Utah 1988). Because the insurance policy language in this case is, at best, ambiguous with regard to drug overdose and death, we construe the policy in favor of coverage. Insurance companies are free to incorporate policy exclusions for death from drug overdose and if they do not elect to do so, the courts should not write such an exclusion into the policy. *O'Toole,* 671 F.2d at 915; *Miller,* 358 N.E.2d at 260–61. "[T]he absence of a specific exclusion in the policy drawn by the insurer supports a

---

1. There are cases which hold that death from drug overdose which is the unexpected result of a wholly intentional act is not a death from accidental means. These jurisdictions distinguish death by "accident" and death incurred by "accidental means." *See, e.g., Hargreaves v. Metropolitan Life Ins. Co.,* 104 Cal.App.3d 701, 163 Cal.Rptr. 857 (1980); *Gordon v. Metropoli-*

*tan Life Ins. Co.,* 256 Md. 320, 260 A.2d 338 (1970). "Even when applying the means test, however, the courts nevertheless have held consistently that where the voluntary action consisted of an unintentional overdose of drugs, the resulting death occurred by an accidental means." *Pilcher v. New York Life Ins. Co.,* 25 Cal.App.3d 717, 102 Cal.Rptr. 82, 86 (1972).

liberal interpretation of the coverage."
*Minton,* 373 F.Supp. at 35.

Affirmed.

BENCH and BILLINGS, JJ., concur.