**Julie M. WINCHESTER,**
**Plaintiff–Appellant,**

v.

**PRUDENTIAL LIFE INSURANCE**
**COMPANY OF AMERICA,**
**Defendant–Appellee,**

and

**Life Insurance Company of North**
**America, Defendant.**

No. 90–4201.

United States Court of Appeals,
Tenth Circuit.

Sept. 24, 1992.

John R. Anderson of Beaslin & Anderson, Vernal, Utah, for plaintiff-appellant.

Peter W. Billings, Jr., and Craig T. Jacobsen of Fabian and Clendenin, Salt Lake City, Utah, for defendant-appellee.

Before MOORE and EBEL, Circuit Judges, and COOK, Senior District Judge.[*]

EBEL, Circuit Judge.

In this appeal, we address whether an insurance company providing a group accidental death and dismemberment insurance policy to an ERISA plan permissibly denied coverage to a plan participant who died of heart failure following a firefighting training exercise. To answer this question, we must consider (1) the standard under which we must review the insurance company's actions, (2) the sweep of ERISA's preemption section, and (3) the construction the Utah courts place upon certain terms in the insurance policy.

We hold that the district court correctly granted summary judgment in favor of the insurance company based on three grounds. First, under Utah law, heart failure alone does not constitute "bodily injury" within the meaning of an accidental death insurance policy. Second, to the extent that Utah law is ambiguous, we must defer to the plan administrator's interpretation of the policy terms unless it is arbitrary and capricious. Third, the appellant did not meet her burden on summary judgment of showing adequate evidence that death resulted independent of a preexisting bodily infirmity or illness so as to establish that as a genuine disputed issue of fact. Accordingly, we affirm.

## I.  Background

Julie Winchester, the appellant, is the widow of William Winchester. Prior to his death, Mr. Winchester worked as a plant operator at an electrical power plant. He died of an apparent heart attack following a firefighting training exercise at the plant.

Mr. Winchester participated in an employee benefit plan sponsored by the National Rural Electric Cooperative Association and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. The plan extended coverage to participants in a group insurance policy issued by Prudential Insurance Company ("Prudential"), the appellee. Prudential also served as administrator of the plan with regard to benefits provided under the policy. These benefits included term life insurance and accidental death and dismemberment insurance.

Because of the lack of a nearby firefighting facility, the job duties of plant operator included fighting fires that occurred at the power plant. On the day of his death, Mr. Winchester participated in a firefighting training exercise. He and the other operators ran through one twelve-minute drill in which they were unable to extinguish the fire. They then took a half-hour break, after which they engaged in a second drill. They successfully extinguished this second fire in seven minutes. During both drills, all the participants wore fireproof rubber suits.

Mr. Winchester collapsed shortly after the second drill. He was pronounced dead at the hospital. Mr. Winchester apparently suffered heart failure, but the cause of the heart failure was undetermined. No autopsy was performed.

Mrs. Winchester filed claims for both life insurance and accidental death insurance benefits. Prudential paid the former but denied the latter on the grounds that Mr. Winchester's death did not come within the terms of the policy for accidental death. Specifically, the policy conditioned accidental death coverage on "[t]he [e]mployee [having] sustained an accidental bodily inju-

---

[*] The Honorable H. Dale Cook, Senior District Judge of the United States District Court for the Northern District of Oklahoma, sitting by designation.

ry," and "[t]he injury, directly and independently of all other causes, [having] resulted in the loss." Prudential contended that Mr. Winchester's death had not met these conditions.

After Prudential's refusal to pay accidental death benefits, Mrs. Winchester brought suit in Utah state court. Prudential then removed the case to the United States District Court for the District of Utah based on diversity jurisdiction. Although not styled as such, this case arises under 29 U.S.C. § 1132, which provides the exclusive remedy for the failure to obtain benefits from an ERISA plan. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987); *cf. Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1439 (9th Cir.1990) (district court required plaintiff to file amended complaint restating cause of action as an ERISA claim following removal to federal court).

Prudential moved for summary judgment. The district court granted Prudential's motion based on several theories. It held first that "bodily injury" required injury caused by external violence such as a cut, bruise, or wound, and Mrs. Winchester had put forth no evidence of such injuries. Second, Mrs. Winchester set forth no facts to show that the death was "accidental" within the meaning of the policies. This appeal followed.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. Standard of Review

The district court implicitly reviewed Prudential's actions de novo. Prudential asserts that the court should have reviewed its decision to deny benefits under the arbitrary and capricious standard.

■ Courts must review an ERISA administrator's actions de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), in which case review is under the arbitrary and capricious standard. *See Sandoval v. Aetna Life and Casualty Ins. Co.*, 967 F.2d 377, 380 (10th Cir.1992). The key, then, lies in determining whether a plan provides an administrator with such discretion. Here, the plan summary stated that "Prudential, as Claim Administrator, determines the benefits for which an individual qualifies under the Benefit Plan" and that "the insurance company has the exclusive right to interpret the provisions of the Plan, [and] its decision is conclusive and binding." R., Doc. 42.

■ In *Pratt v. Petroleum Production Management Inc. Employee Savings Plan & Trust*, 920 F.2d 651 (10th Cir.1990), we considered similar language, *see id.* at 657 n. 7, and held that it did vest the administrator with "not only the authority, but also the discretion, to decide questions of plan interpretation." *Id.* at 658 (citations omitted). In accordance with *Pratt*, we conclude that Prudential had discretion to interpret the contract, and hence that the appropriate standard for judicial review of Prudential's interpretation of the plan and its determination of Winchester's eligibility for benefits is whether the actions were arbitrary or capricious. *Sandoval*, 967 F.2d at 379–80. Indicia of arbitrary and capricious conduct include lack of substantial evidence, mistake of law, bad faith, and conflict of interest. *See id.* at 380 n. 4.

■ The district court therefore erred in its use of the de novo standard of review. However, the district court upheld the administrator's interpretation, and so it certainly would have upheld the interpretation under the more limited arbitrary and capricious standard. Because we hold that the district court reached the correct result, the use of the wrong standard was harmless error.

---

1. A second insurance company, Life Insurance Company of North America ("LINA"), was also a defendant below. Like Prudential, LINA provided accidental death and dismemberment insurance through Mr. Winchester's employee benefit plan. The policy contained a similar provision to the one at issue here. The district court granted LINA's motion for summary judgment along with that of Prudential. LINA was originally an appellee, but was dismissed by stipulation. LINA is therefore no longer a party to this appeal.

## III. ERISA Preemption

Utah case law provides us with guidance in interpreting the insurance policy provision at issue here. Before consulting that law, however, we must determine whether it is preempted by ERISA. Whether a state law is preempted depends entirely upon the nature of that state law. In this case, we are concerned with Utah court decisions that construe language such as "accidental bodily injury" in the context of an insurance policy.

ERISA's preemption sections consist of three clauses: the preemption clause,[2] the saving clause,[3] and the deemer clause.[4] The preemption clause broadly preempts all laws that "relate to" an ERISA plan. However, the saving clause limits the preemption clause's application by exempting laws relating to insurance, banking, and securities from the preemption clause's broad sweep. The deemer clause, in turn, creates an exception to the saving clause's exception. Although the saving clause prevents the preemption of insurance, banking, and securities laws, an ERISA plan may not be "deemed" to be an insurance, banking, or securities company.[5]

In the context of insurance regulation, the deemer clause comes into play when an ERISA plan provides insurance to its participants. A "self-funded plan" pays all benefits itself. In contrast, an "insured plan" purchases insurance policies for its members from an outside insurer. Because a self-funded plan may not be deemed an insurance company, the saving clause does not save state insurance laws from preemption when applied to such a plan directly. On the other hand, the saving clause does save state insurance laws from preemption when they are applied to an insurance policy purchased by an ERISA plan. Thus, whether ERISA preempts a given state insurance law depends on whether the plan in question is self-funded or insured. *See FMC Corp. v. Holliday*, 498 U.S. 52, —–—, 111 S.Ct. 403, 409–10, 112 L.Ed.2d 356 (1990); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985).

We first apply the preemption clause. The decisions in question certainly address the circumstances under which the ERISA plan here must pay benefits. Hence, the decisions clearly "relate to" the ERISA plan and are preempted unless exempted by the saving clause.

Thus, we must apply the saving clause. In *Pilot Life*, the Supreme Court set forth a two-part inquiry to determine if a given law "regulates insurance" within the meaning of the saving clause. As we explained in *Kelley v. Sears, Roebuck & Co.*, 882 F.2d 453 (10th Cir.1989):

[T]he court first considers a "common sense view" of the language of the saving clause. Second, it determines whether the cause of action falls under the "business of insurance," applying three criteria: (1) whether the state law has

---

2. The preemption clause provides, "Except as provided in [the saving clause,] the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a).

3. The saving clause provides, "Except as provided in [the deemer clause], nothing in [ERISA] shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking or securities." 29 U.S.C. § 1144(b)(2)(A).

4. The deemer clause provides, "Neither an employee benefit plan ..., nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be

engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." 29 U.S.C. § 1144(b)(2)(B).

5. We emphasize that ERISA preemption covers state decisional law as well as state statutory law. *See* 29 U.S.C. § 1144(c)(1) ("The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State."). Similarly, the saving clause can exempt state decisional law as well as state statutory law from the scope of ERISA's preemption. *See Pilot Life*, 481 U.S. at 48 n. 1, 107 S.Ct. at 1553 n. 1; *Evans*, 916 F.2d at 1440 n. 1. Thus, we utilize ERISA preemption analysis to determine whether to apply the applicable Utah decisions in this case.

the effect of transferring or spreading a policyholder's risk; (2) whether the state law is an integral part of the policy relationship between the insurer and the insured; and (3) whether the state law is limited to entities within the insurance industry.

*Id.* at 456 (citing *Pilot Life,* 481 U.S. at 48–49, 107 S.Ct. at 1553–1554); *see also Metropolitan Life Ins. Co. v. Hanslip,* 939 F.2d 904, 907 (10th Cir.1991).

■ Common sense dictates that the Utah decisions in question do regulate insurance. Laws that specifically regulate the terms of insurance contracts clearly regulate insurance. *See Metropolitan Life,* 471 U.S. at 740–741, 105 S.Ct. at 2389–2390. The three criteria of the "business of insurance" similarly support this conclusion. *First,* the decisions do have "the effect of transferring or spreading a policyholder's risk." The more liberally a court construes the phrase "accidental bodily injury," the more risk is transferred from the individual policyholder to all policyholders. Conversely, if a court construes the phrase more strictly, the individual retains more risk and other policyholders bear less. *See Senkier v. Hartford Life & Acc. Ins. Co.,* 948 F.2d 1050, 1052 (7th Cir.1991). *Second,* the Utah decisions almost by definition affect "an integral part of the policy relationship between the insurer and the insured." The decisions construe the terms of the insurance policy and affect under what circumstances the policyholder may recover. *Third,* the effect of the Utah decisions "is limited to entities within the insurance industry." Although arguably the decisions involve the more general realm of contract law, the necessity to interpret the phrase "accidental bodily injury" in an insurance policy arises, of course, only in the context of the insurance industry. Indeed, the Utah cases make it clear that interpretation of the phrase in other contexts, such as worker's compensation cases, provides no help in the insurance context. *See, e.g., Hoffman v. Life Ins. Co. of North America,* 669 P.2d 410, 415 (Utah 1983) (discussing meaning of " 'accidental' *as used in an accidental death insurance policy* ") (emphasis add-

ed); *Elton v. Bankers Life & Cas. Co.,* 30 Utah 2d 213, 516 P.2d 165, 171 (1973) (distinguishing worker's compensation cases).

After consideration of *Pilot Life* 's two-step inquiry, we conclude that the saving clause does save the Utah decisions at issue from preemption. Having so concluded, we must finally consider whether the deemer clause requires the preemption of the decisions despite the saving clause. Winchester brought this suit not against the plan itself but against Prudential, which underwrites the accidental death and dismemberment insurance policy at issue here. Thus, for purposes of that policy, the plan was insured rather than self-funded. The deemer clause therefore does not apply.

Based on all of the foregoing, we conclude that ERISA does not preempt the Utah decisions that we consider below.

## IV. Construing the Insurance Policy

The issue we confront here, whether a heart attack occurring after exertion falls within the terms of an accident insurance policy, has led to contrary results in different jurisdictions. *See generally* Kristine C. Karnezis, Annotation, *Heart Attack Following Exertion or Exercise as Within Terms of Accident Provision of Insurance Policy,* 1 A.L.R.4th 1319, § 5 (1980 & Supp. 1991). Thus, there is an absence of any uniform or consistent body of law upon which we can rely. Our task, however, is to determine how the Utah courts would decide the question.

Under the terms of the accident insurance policy in the instant case, the claimant must meet three conditions: (1) there must have been a "bodily injury," (2) the injury must have been "accidental," and (3) the death must have resulted from the injury "directly and independently of all other causes." R., Doc. 42. We consider each condition in turn.

### A. "Bodily Injury"

■ We first consider whether a bodily injury occurred. Mr. Winchester suffered no external violence as evidenced by a

wound or abrasion. The appellant contends instead that the heart failure itself constitutes the bodily injury. Thus, the question is whether, under Utah law, heart failure by itself constitutes a bodily injury as that term is used in an accidental insurance policy.

This Circuit construed Utah law in a similar context in *Wright v. American Home Assurance Co.*, 488 F.2d 361 (10th Cir. 1973). In *Wright*, the plaintiff sought to recover on an accidental death policy that provided benefits if the death resulted "directly and independently of all other causes and effected solely through an accidental bodily injury." *Id.* at 364. Like Mr. Winchester, the plaintiff's decedent in *Wright* had possibly died of a heart attack. We stated that "[i]n common usage, 'bodily injury' designates an injury caused by external violence such as a cut, a bruise or a wound." *Id.* Without evidence of such an injury, we held that the insurance company was entitled to judgment as a matter of law. *Id.*

█ Pursuant to our holding in *Wright*, a bodily injury under Utah law implies some sort of external violence without which the injury would not have occurred. *Compare, e.g., Hoffman*, 669 P.2d at 414 (decedent shot by police; recovery permitted) *and Hardy v. Beneficial Life Ins. Co.*, 787 P.2d 1, 2 (Utah App.1990), *cert. denied*, 795 P.2d 1138 (Utah 1990) (decedent ingested drug overdose; recovery permitted) *with Elton*, 516 P.2d at 169 (decedent suffered heart failure caused by arteriosclerosis aggravated by stress but unaccompanied by any external violence or physical impact; recovery denied). The Utah Supreme Court in *Elton* listed a number of occurrences that it described as within the common usage of the term "accidental bodily injury," including "a sudden blow, or an airplane crash, or a falling brick on one's head, or a fall in the bathtub, or a slip on an indiscernible slick of ice, or a tumble from a haystack, or a misguided dart in the eye, or a hand in the wringer." 516 P.2d at 174. Notably, each of these "accidents" also involves a physical impact to the victim.

The broad reading that the appellant would give to "bodily injury," that heart failure by itself is a bodily injury, would essentially read that term out of the policy altogether. Death, being a physical phenomenon, will always be caused by some broad concept of bodily injury, such as heart attack, stroke, or internal organ failure. If the phrase "bodily injury" were given such a broad interpretation in triggering death benefits, the phrase would really be superfluous, because death always and necessarily entails such bodily injury. In such a case, an accidental death policy would be little different from a life insurance policy, save for any individual exclusions contained in each. *See Elton*, 516 P.2d at 172. Typically, an accidental death policy is available for considerably lower premiums than a life insurance policy, and we should be chary about fundamentally remaking a policy to cover situations not intended actuarially.

In the instant case, Mrs. Winchester presented no evidence of external violence or physical impact. Therefore, Mr. Winchester's heart failure by itself would not indicate that he suffered a bodily injury within the meaning of the insurance policy. This failure to meet the bodily injury requirement provides a first basis for affirming the district court's summary judgment in favor of Prudential.

█ The fact that we must review Prudential's interpretation under an arbitrary and capricious standard provides a second basis for affirming the district court. At worst, Utah law is ambiguous as to whether Mr. Winchester's heart failure constituted a bodily injury. Given the Tenth Circuit's previous construction of Utah law in *Wright*, Prudential's interpretation is certainly defensible and cannot be characterized as arbitrary and capricious. Thus, deference must be accorded to the plan administrator in its interpretation of the plan given the fact that the ERISA plan provides that "the insurance company has the *exclusive* right to interpret the provisions of the Plan, [and] its decision is *conclusive* and binding." R., Doc. 42 (emphasis added); *see Sandoval*, 967 F.2d at 380.

## B. *"Accidental"*

The courts have divided over the question whether "accidental" in the context of an accident insurance policy means "accidental means" or "accidental results." *See generally Senkier v. Hartford Life & Acc. Ins. Co.,* 948 F.2d 1050, 1052–53 (7th Cir.1991); John D. Ingram & Lynne R. Ostfeld, *The Distinction Between Accidental Means and Accidental Results in Accidental Death Insurance,* 12 Fla.St. U.L.Rev. 1 (1984). Under the stricter accidental means approach, the activity or occurrence that led to the injury must have been accidental; thus, if a decedent engaged in the fatal activity intentionally, recovery would be barred. On the other hand, under the less strict accidental result approach, if death was not a reasonably foreseeable result of the activity in question, recovery is permitted despite the decedent's engaging in the activity intentionally.

The Utah courts appear to have wavered somewhat as to which approach to adopt. In *Thompson v. American Casualty Co.,* 20 Utah 2d 418, 439 P.2d 276, 277–78 (1968), the Utah Supreme Court interpreted the phrase "accidental means" in a disability policy to include disability that was unexpected even though the activity leading to the disability was intentional. In contrast, in *Elton,* the same court appears more concerned with whether the event that caused the loss was sudden and unexpected than with whether the loss itself was unexpected. Thus, the court suggested that a heart attack due to stress does not come within the ordinary meaning of the word *accident,* notwithstanding the fact that a heart attack victim generally does not expect its occurrence. *See* 516 P.2d at 174–76. The court in *Hoffman v. Life Ins. Co. of North America,* 669 P.2d 410 (Utah 1983), provides language that at first glance seems to indicate an adoption of the accidental means approach: "a person is a victim of an accident when, from the victim's point of view, the occurrence causing the injury or death is not a natural and probable result of the victim's own acts." *Id.* at 416 (emphasis omitted). The court's subsequent discussion, however, makes clear that the court in fact embraces the other, less strict, standard: "the common meaning of the term ["accident"] is defined in terms of whether the event was naturally and probably expected or anticipated by the insured." *Id.* We are convinced that the Utah courts currently use the less strict standard of defining "accidental" as a result that was not reasonably foreseeable even if the means causing the result was foreseeable or even intentional. *See, e.g., Hardy v. Beneficial Life Ins. Co.,* 787 P.2d 1, 2–3 (Utah App.), *cert. denied,* 795 P.2d 1138 (Utah 1990).

Mr. Winchester presumably did not reasonably foresee suffering heart failure as a result of his participation in the firefighting exercise. Therefore, under the current state of Utah law, his death was accidental, thereby satisfying the second condition of the policy.

## C. *"Directly and Independently of All Other Causes"*

We finally consider whether "[t]he injury, directly and *independently of all other causes,* resulted in the loss [emphasis added]." The policy thus makes clear that this provision excludes losses resulting even in part from preexisting conditions. This theme is echoed in the exclusions, which state that "[a]ny loss which results ... directly or indirectly from bodily or mental infirmity or disease" is "not covered." Thus, if Mr. Winchester did have a preexisting infirmity, such as a heart condition, then his death did not result "directly and independently of all other causes."

One issue in dispute in this case was whether long-term smoking had led to a heart condition that made Mr. Winchester more prone to heart failure. The appellant argues that because this fact was in dispute, we must assume for purposes of summary judgment that no preexisting infirmity contributed to the loss. Given the state of the record before the district court, we disagree.

In order to prevail on the merits, the appellant had to prove that the death occurred independently of any other cause,

including a preexisting bodily infirmity. "[T]he inquiry involved in a ruling on a motion for summary judgment ... necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). "The judge's inquiry ... unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" *Id.* (citation omitted; alteration in original).

In this case, the appellant needed to prove by a preponderance of the evidence that her husband's death fell within the terms of the insurance policy. However, her own expert conceded that "people that have heart attacks generally have heart disease." Aplee Supp.App. at 54.[6] Thus, the appellant's own evidence indicated that it was more likely than not that Mr. Winchester had preexisting heart disease. Given that no autopsy was performed nor was any other evidence available as to the precise cause of death, the appellant could not have refuted this likelihood set forth by her own witness of a preexisting infirmity. Therefore, the appellant could not have met her burden of proof of showing that her husband's death met the insurance policy's third condition. This represents a third basis for upholding the district court's granting summary judgment in favor of Prudential.

## V. Conclusion

We have identified three interrelated grounds for affirming the district court's granting of summary judgment in favor of Prudential Insurance Co. First, we construe Utah law to indicate that heart failure by itself without external violence to the body does not constitute bodily injury within the meaning of an accidental death insurance policy. Second, to the extent Utah law is ambiguous, we must defer to the plan administrator's interpretation of policy terms under the arbitrary and capricious standard and, given our holding in *Wright*, we cannot say its interpretation of this phrase was arbitrary and capricious. Third, the appellant did not establish at summary judgment a genuine dispute of fact as to whether Mr. Winchester's death resulted "independently of all other causes," and was not attributable "directly or indirectly" to a preexisting "bodily ... infirmity or disease." When all three grounds are considered together, we feel confident in the correctness of our ultimate conclusion.

■ Finally, in our view, heart failure following planned exertion does not, in common parlance, constitute "accidental bodily injury" resulting "independently of all other causes" such as "bodily infirmity or disease." Accordingly, we AFFIRM the district court's grant of summary judgment in favor of Prudential.

---

**6.** The appellant's expert was also asked "Do I also understand your testimony correctly that you're not telling us to a reasonable degree of medical certainty that you rule out the possibili-

ty that Mr. Winchester may have had some sort of coronary artery disease, you just aren't sure. Is that fair?" The expert answered: "That's fair." Supp.App. at 52.