**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 11 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

LAJUAN C. JOHNSON and STEVEN JOHNSON,

Plaintiffs-Appellees and Cross-Appellants,

v.

LIFE INVESTORS INSURANCE COMPANY OF AMERICA, an Iowa corporation, and MONUMENTAL LIFE INSURANCE COMPANY, a Maryland corporation,

Defendants-Appellants and Cross-Appellees.

Nos. 98-4120
98-4121
98-4122
(D. Utah)
(D.Ct. No. 96-CV-283-K)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TACHA, BRORBY**, and **EBEL**, Circuit Judges.

_____

This case arises out of a dispute over insurance policies issued by Life

Investors Insurance Company of America (Life Investors), and Monumental Life

Insurance Company (Monumental) in favor of Marvin Johnson, deceased. Life

Investors and Monumental appeal the order of the district court granting summary

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

judgment in favor of LaJuan Johnson and Steven Johnson, the plaintiffs and beneficiaries of insurance policies issued by the two insurance companies. LaJuan and Steven Johnson (the Johnsons) cross-appeal the denial of attorney fees. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm the grant of summary judgment in favor of the Johnsons in their case against Monumental, affirm the denial of attorney fees to the Johnsons from Monumental, and reverse and remand the grant of summary judgment against Life Investors, and denial of attorney fees to the Johnsons from Life Investors, to the district court for further proceedings in accordance with this opinion.

I.    FACTUAL BACKGROUND

For the purpose of ruling on the summary judgment motions, the district court relied on the following undisputed material facts. In February 1989, Mr. Johnson bought an accidental death policy from American Express Life Assurance Company (AMEX). In December 1989, Mr. Johnson and his wife, LaJuan Johnson, completed a "request for increased benefits" form in response to a request they received from AMEX. In February 1993, Life Investors assumed responsibility for the insurance policy issued by AMEX to Mr. Johnson. Also in 1993, Mr. Johnson purchased a policy for accidental death insurance from Monumental, designating his wife, LaJuan, and his son, Steven, as beneficiaries.

Years prior to his purchase of these policies, Mr. Johnson had been diagnosed with myotonic dystrophy, a form of muscular dystrophy. He received treatment for this disease until his death in 1995. Mr. Johnson developed muscle weakness as a result of the myotonic dystrophy. Although he remained relatively active, Mr. Johnson did occasionally stumble and fall down. In 1991, Mr. Johnson fell down the stairs in his home and received treatment in the hospital for his injuries.

On July 29, 1995, Mr. Johnson stumbled and fell while carrying a tray up the stairs in his home, causing a cervical neck fracture and a possible thoracic rib fracture. Mr. Johnson was admitted to the hospital in the early morning hours of July 30, 1995 and was treated for his injuries. On August 1, 1995, while still in the hospital, Mr. Johnson began to experience symptoms of pneumonia. His doctor transferred him to the care of a pulmonologist in the intensive care unit. Because Mr. Johnson began experiencing difficulty breathing, physicians attempted to intubate him to clear his lungs. However, this proved extremely difficult due to his neck fracture. During the next day, it became apparent Mr. Johnson could no longer breathe on his own and would survive only with the assistance of long-term ventilatory support. On August 2, 1995, authorized hospital staff withdrew artificial life support measures and Mr. Johnson passed

-3-

away.  Dr. Edward Campbell filled out the death certificate and listed the immediate cause of death as pneumonia, due to or as a consequence of a cervical spine fracture, and the underlying cause of death as myotonic dystrophy.  He identified the manner of death as an "Accident."

Mrs. Johnson and Steven Johnson made claims under the insurance policies following Mr. Johnson's death.  Both insurance companies denied these claims, relying on language in their policies excluding death caused by sickness and defining an "injury" as a bodily injury caused by an accident "independent of all other causes."[1]

---

[1]  The relevant language in the Monumental policy is as follows:

DEFINITIONS

....

INJURY means bodily injury caused by an accident.  The accident must occur while the Covered Person's insurance is in force under the Group Policy.  The Injury must be the direct cause of the Loss and must be independent of all other causes.  The Injury must not be caused by or contributed to by Sickness.

....

EXCLUSIONS

We will not pay a benefit for a loss which is caused by, results from, or [is] contributed to by:

## II.   PROCEDURAL BACKGROUND

Following the insurance companies' denial of coverage, the Johnsons filed suit in the district court, claiming the companies breached their contracts. However, rather than making a determination on whether the companies breached the contracts, the district court instead concluded the companies were estopped

---

....

(5) Sickness or its medical or surgical treatment, including diagnosis ....

The pertinent language from the Life Investors/AMEX policy is as follows:

### Definitions

....

"Injury" means bodily injury of a Covered Person which:
1.  is caused by an accident which occurs when the Covered Person's insurance is in force under the Policy; and
2.  results in loss insured by the Policy; and
3.  creates loss due, directly and independently of all other causes, to such accidental bodily injury.

....

### General Exclusions

The Policy does not insure for any loss resulting from any Injury caused or contributed to by, or as a consequence of ...

....

3.  any sickness or infirmity unless the treatment of such is required as the direct result of an accidental bodily injury ....

from relying on the sickness exclusions to deny coverage because the companies failed to disclose the sickness exclusions in the manner required by Utah insurance regulations. Consequently, the district court granted the Johnsons' motions for summary judgment in both cases, and denied the companies' cross-motions for summary judgment. The district court also denied the Johnsons' request for attorney fees.

Monumental and Life Investors now appeal the district court's grant of summary judgment to the Johnsons and denial of their motions for summary judgment. Neither company denies it failed to disclose the sickness exclusion in the manner required by the regulation.[2] Instead, each argues the regulation is inapplicable to its policy. Monumental contends the disclosure obligations do not apply to accidental death policies. Life Investors concedes the disclosure regulation applies to accidental death policies but contends the regulation is inapplicable to its policy because Utah adopted the rule after AMEX issued the original policy to Mr. Johnson. Both companies argue they are entitled to summary judgment because the Johnsons failed to show Mr. Johnson's death

_____

[2] The district court determined the language of the exclusionary provisions is buried in each policy and not in bold or color typeface as required by Utah's regulations. The court also concluded the exclusions do not clearly inform laymen as to what coverage exists.

resulted from an accident and independently of all other causes. The Johnsons cross-appeal the denial of their request for attorney fees.

III.  APPLICATION OF THE DISCLOSURE REQUIREMENT TO THE POLICIES

A.  Standard of Review

Because the district court's jurisdiction over this matter was based on diversity of citizenship, it was required to discern and apply the substantive law of Utah, the forum state, with the objective of reaching the same result as would a Utah court. *See Brodie v. General Chem. Corp.*, 112 F.3d 440, 442 (10th Cir. 1997). We review *de novo* the district court's determinations of the substantive law of Utah. *See id.* However, although the substantive law of Utah governs the analysis of the underlying claim in this case, federal law controls the ultimate procedural question – whether summary judgment is appropriate. *See Oja v. Howmedica, Inc.*, 111 F.3d 782, 792 (10th Cir. 1997); *May v. National Union Fire Ins. Co.*, 84 F.3d 1342, 1345 (10th Cir. 1996). "We review the grant of summary judgment de novo, applying the same standard as did the district court. Summary judgment is then appropriate if, after reviewing all of the evidence submitted in the light most favorable to the non-movant, no genuine issue of material fact survives to merit a trial." *Chambers v. Colorado Dep't of Corrections*, 205 F.3d 1237, 1241 (10th Cir. 2000) (citations omitted); Fed. R. Civ. P. 56(c). "Where, as

here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1998). "Where different ultimate inferences may properly be drawn, the case is not one for a summary judgment." *Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000) (quotation marks and citation omitted).

### B.    Monumental

We first address Monumental's argument the Utah disclosure regulation does not apply to its accidental death policy.  The regulation at issue is found in the portion of the Utah Administrative Code dealing with insurance administration, and entitled "Individual and Franchise Disability Insurance, Minimum Standards."  Utah Admin. Code R590-126.  The disclosure regulation provides:

> Accident-Only Disclosure.  All accident-only policies shall contain a prominent statement on the first page of the policy, or attached thereto, in either contrasting color or in boldface type at least equal to the size of type used for policy captions, as follows:  "This is an accident-only policy, and it does not pay benefits for loss from sickness."

Utah Admin. Code R590-126-6G.  The scope of Rule 590 is described as follows:

> This rule shall apply to all individual and franchise *disability* insurance policies .... The rule shall apply only to coverage issued after the effective date of the rule.

Utah Admin. Code R590-126-2B (emphasis added). Rule 590 provides a list of definitions "[i]n addition to the definitions of Sections 31A-1-301 and 31A-22-605(2), U.C.A. [the general provisions of the Utah Insurance Code]," which are to "apply for the purposes of this rule." Utah Admin. Code R590-126-3A. The term "disability insurance" is defined in the general provisions of the Utah Insurance Code as:

> insurance written to indemnify for *losses and expenses resulting from accident* or sickness, to provide payments to replace income lost from accident or sickness, and to pay for services resulting directly from accident or sickness, including medical, surgical, hospital, and other ancillary expenses.

Utah Code Ann. § 31A-1-301(26) (Supp. 1996) (emphasis added). Monumental contends the term "disability insurance" as defined above, is too narrow to encompass an accidental death policy, and thereby argues the disclosure requirement contained in the regulation section entitled "disability insurance," does not apply to its policy.

The Utah courts have never determined whether the rules set forth in the "Individual and Franchise Disability Insurance" section of the insurance code apply only to disability insurance policies or to other types of insurance policies

such as those addressing accidental death insurance. However, the general

provisions of the Utah Insurance Code define "disability insurance" broadly to

include insurance policies covering "losses" resulting from accident or sickness.

*See* Utah Code Ann. § 31A-1-301(26). Nothing in the regulations indicates that

"losses" resulting from accident or sickness do not include death. Moreover, as

the district court noted, the regulations dealing with "disability insurance"

specifically mention policies providing for accidental death benefits in several

subsections.[3] Thus, it is clear Utah implemented the "disability insurance"

regulations with the intent to cover accidental death policies. Even though these

---

[3] For example, the subsection entitled "Disability, Minimum Standards for Benefits," defines and sets the minimum standards for "Accident-Only Coverage" as follows:

> a policy of accident insurance which provides coverage, singly or in combination, *for death*, dismemberment, disability, or hospital and medical care caused by accident. *Accidental death* and double dismemberment amounts under such a policy shall be at least $1,000 and a single dismemberment amount shall be at least $500.

Utah Admin. Code R590-126-7H (emphasis added). Likewise, "Specified Accident Coverage" is defined as:

> an accident insurance policy which provides coverage for a specifically identified kind of accident (or accidents) for each person insured under the policy for *accidental death* or accidental death and dismemberment, combined with a benefit amount not less than $1,000 for accidental death, $1,000 for double dismemberment and $500 for single dismemberment.

Utah Admin. Code R590-126-7I(1) (emphasis added).

-10-

regulations are not codified, in Utah, insurance regulations "passed pursuant to a statutory grant of authority have the full force and effect of law." *Horton v. Utah State Retirement Bd.*, 842 P.2d 928, 932 n. 2 (Utah Ct. App. 1992) (citations omitted); *see also V-1 Oil Co. v. Department of Envtl. Quality*, 904 P.2d 214, 218-19 (Utah Ct. App. 1995). Consequently, we conclude the mandatory disclosure provision contained in section R590-126-6G of the Utah Administrative Code applies to Monumental's accidental death policy.

Because Monumental's policy did not comply with the disclosure regulation when issued, we also conclude the district court applied the appropriate remedy by striking the exclusionary language of the policy. *See General Motors Acceptance Corp. v. Martinez*, 668 P.2d 498, 502 (Utah 1983) (holding the insurance company was estopped as a matter of law from denying coverage under its policy due to its failure to comply with Utah insurance law).[4] *See also Cullum*

---

[4] We reject Monumental's argument *Martinez* cannot apply because it involved an insurance company's failure to comply with Utah codified law as opposed to mere insurance regulations. In support of its argument, Monumental also contends estoppel cannot apply to violation of an agency rule which it claims prohibits private relief. Contrary to these contentions, nothing in Utah's insurance regulations prohibits private relief. Given Utah's insurance regulations maintain the full force and effect of law, *Horton*, 842 P.2d at 932 n.2, we see no difference in whether Monumental violated codified or regulatory provisions. As a consequence, it follows that if the private remedy of estoppel is available for one, it is also available for the other.

-11-

*v. Farmers Ins. Exch.*, 857 P.2d 922, 926-27 (Utah 1993) (concluding failure to comply with Utah insurance law rendered an exclusion provision in the insurance contract unenforceable).[5]  As a result, under the circumstances presented, Monumental's claim Mr. Johnson's myotonic dystrophy caused or contributed to the fall which led to his death is irrelevant to our determination.[6]  Because no

---

[5]  Monumental argues the district court erred by striking the language defining "injury" in its policy.  Monumental argues the district court acted overzealously by striking this language as a consequence of its violating the disclosure regulation.  Monumental also contends even if the district court correctly determined its definition was more restrictive than allowed by Utah insurance regulations, the proper remedy would have been to substitute the statutory definition of "injury" provided in Utah Admin. Code R590-126-3A(1)(a).  Monumental further argues even if the district court substituted the less restrictive language to define injury under the contract, it still would not have been required to pay death benefits to the Johnsons.  We disagree.

The purpose of the disclosure regulation is to alert the insured to the sickness exclusion.  *See* Utah Admin. Code R590-126-2A.  It is nonsensical to assert the insurer may violate the disclosure regulation and be estopped from relying on the sickness exclusion, but then allow the insurer to nevertheless deny coverage based on other language in the policy which effectively excludes injuries allegedly resulting, in part, from sickness.  Thus, we reject Monumental's argument it is entitled to summary judgment because myotonic dystrophy contributed to Mr. Johnson's death.

[6]  Despite Monumental's contentions, the district court's ruling did not turn the policy into a "disability" or "life insurance" policy.  Rather, the district court recognized the policy extended only accidental death insurance, but under the circumstances, extended such coverage without determining if an underlying illness caused the "accident," given the policy's failure to follow Utah's disclosure requirements.  While Monumental argues the district court should have applied the exclusion and denied benefits under our holding in *Winchester v. Prudential Life Ins. Co. of America*, 975 F.2d 1479 (10th Cir. 1992), it misses the point.  First, the district court never reached the issue on whether *Winchester* applied to this case given Monumental's failure to comply with Utah's disclosure requirements.  Consequently, even if we determined the exclusion adequately discloses that coverage does not extend to accidents resulting from pre-

-12-

material, controverted facts are left for a jury to decide in Monumental's case, the district court properly granted summary judgment in favor of the Johnsons.

D.    Life Investors

Life Investors asserts the disclosure regulation does not apply to its policy because AMEX issued the original policy before the disclosure regulation became effective.[7] The district court concluded Life Investors/AMEX subjected itself to the provisions of the regulation by accepting additional premiums for increased benefits after the effective date of the disclosure rule.[8] Life Investors argues the

_____

existing conditions, Monumental nevertheless violated Utah's disclosure regulations by burying the disclosure in the policy and not setting it out in bold or colored type.

[7] As stated previously, Mr. Johnson bought the accidental death policy from AMEX in February 1989. Utah enacted the Regulations at issue on June 20, 1989. Mr. Johnson increased his benefits in December 1989. In February 1993, Life Investors assumed responsibility for the AMEX insurance policy.

[8] Life Investors points out the district court relied on the wrong certificate when rendering its decision. This mistake arose from the confusion generated when, during discovery, Life Investors mistakenly produced a copy of a specimen certificate which it did not send to the Johnsons. However, Life Investors drew the court's attention to this error in a motion to file a supplemental memorandum in support of its motion for summary judgment. The district court granted Life Investors' motion, and Life Investors subsequently filed a supplemental memorandum in support of its motion for summary judgment and attached the correct certificate. Although Life Investors maintains the district court committed plain error by relying on the incorrect certificate in rendering its decision, it contends the court would have reached the same decision even if it relied on the correct certificate, and asks us to review the district court's decision as if it relied on the correct certificate. The district court reasoned the definition of a "covered injury"

-13-

district court made this determination in error, and suggests the subsequent agreement did not constitute the formation of a wholly new contract that brought it under the auspices of the mandatory disclosure regulation.

Under Utah law, substantive statutes affecting vested rights do not apply retroactively. *See Olsen v. Samuel McIntyre Inv. Co.*, 956 P.2d 257, 260 (Utah 1998). However, because the Utah courts have never addressed whether an agreement to increase benefits in a life insurance contract creates a new policy, subject to statutes and regulations enacted after issuance of the original policy, we look to "other state court decisions, federal decisions, and the general weight and trend of authority" to determine how the Utah courts would resolve this issue. *May*, 84 F.3d at 1345 (quotation marks and citations omitted). Other courts, analyzing similar issues, have held an increase in premiums, benefits, or coverage, does not constitute the creation of a new certificate of insurance subject to regulations enacted after the original date the policy became effective. *See*,

---

contained on page five of the wrong certificate acted as an exclusion for sickness and struck the provision because it lacked bold-faced or colored type as required by the disclosure regulation. We agree the reasoning of the district court concerning the applicability of the disclosure regulation to Life Investors' policy would have been the same whether it relied on the correct or incorrect certificate, and thus, in the interest of resolving this dispute, we review the district court's decision as if based on the correct certificate.

-14-

*e.g., Gahn v. Allstate Life Ins. Co.*, 926 F.2d 1449, 1456 (5th Cir. 1991) (applying Louisiana law and holding the modification of the terms of an insurance policy does not create a new policy); *Metropolitan Property and Liability Ins. Co. v. Gray*, 446 So.2d 216, 219-20 (Fla. Dist. Ct. App. 1984) (holding the mere addition of another person on a policy does not amount to a reissuance of the policy and thus, does not make the policy subject to statutes effective after the issuance of the original policy); *Crow v. Capitol Bankers Life Ins. Co.*, 891 P.2d 1206, 1211 (N.M. 1995) (construing the insurance policy and rider as part of same contract for insurance); *Massachusetts Mut. Life Ins. Co. v. Thacher*, 222 N.Y.S.2d 339, 343 (N.Y. App. Div. 1961) (determining a rider attached to the face of a policy containing an option for extended benefits on the payment of additional premium merely amounts to an extended privilege and does not create a new policy); *Hidary v. Maccabees Life Ins. Co.*, 591 N.Y.S.2d 706, 710 (N.Y. Sup. Ct. 1992) (finding increases in face amount of coverage for payment of additional premiums did not constitute separate new policies); *French v. Insurance Co. of N. Am.*, 591 S.W.2d 620, 621-22 (Tex. Civ. App. 1979) (reasoning the addition of a car to insurance policy did not create a new policy subject to a statute which became effective after the issuance of the original policy).  We can see no reason why Utah would depart from the majority view on this point of law.  Nevertheless, we turn to the Johnsons' argument the increase in

-15-

benefits amounted to new "coverage" and thus, became subject to the disclosure regulation.

In support of their argument Life Investors became subject to the disclosure regulation when it accepted the Johnsons' additional premium payment after the disclosure regulation became effective, the Johnsons focus on the word "coverage" and point out the disability insurance rules "apply only to *coverage* issued after the effective date of the rule." Utah Admin. Code R590-126-2B (emphasis added). In applying this provision to their policy, the Johnsons point out AMEX sent them a letter after it received the additional premium payment stating:

> I have enclosed your revised Data Page for your Certificate APG1000984 which reflects your *increase in coverage*. Please replace the original Data Page with this new one.
>
> Your new quarterly premium will be $82.32. A charge of $56.95 has been placed on your American Express Card account. This represents the difference in premium due for your *additional coverage*.

(Emphasis added.) Based on this language, the Johnsons maintain that by increasing the benefits under the policy, AMEX issued new "coverage" after the effective date of the disclosure regulation, making Life Investors subject to the disclosure regulation. We disagree.

-16-

The term "coverage" when used in the context of an insurance contract is widely held to mean "[i]nclusion of a risk under an insurance policy; the risks within the scope of an insurance policy." Black's Law Dictionary 372 (7th ed. 1999). *See Traders State Bank v. Continental Ins. Co.*, 448 F.2d 280, 283 (10th Cir. 1971) ("The word coverage is, indeed, a term of art in the insurance industry, meaning the sum of all the risks assumed under the policy.") (quotation marks and citation omitted); *see also In re Joint E. and S. Dist. Asbestos Litig.*, 993 F.2d 313, 315 (2d Cir. 1993); *Guaranty Nat'l Ins. Co. v. Bayside Resort, Inc.*, 635 F. Supp. 1456, 1458 (V.I. 1986); *Illinois Farmers Ins. Co. v. Tabor*, 642 N.E.2d 159, 163 (Ill. App. Ct. 1994); *Delcampo v. New Jersey Auto. Full Ins. Underwriting Ass'n*, 630 A.2d 415, 422 (N.J. Super. Ct. Law Div. 1993); *Farmers Ins. Co. of Washington v. Frederickson*, 914 P.2d 138, 140 (Wash. Ct. App. 1996). On the other hand, the term "benefit" is defined in Black's Law Dictionary as: "Financial assistance that is received from an employer, insurance, or a public program (such as social security) in time of sickness, disability, or unemployment." Black's Law Dictionary 151 (7th. ed. 1999). *See Vogel v. Wells*, 566 N.E.2d 154, 161 (Ohio 1991) (quoting Black's Law Dictionary to define "benefit"); *Kratz v. Kratz*, 905 P.2d 753, 755 (Okla. 1995) (relying on Black's Law Dictionary to define "benefit" in the context of an insurance contract).

Hence, neither definition persuades us an increase in "benefits" alone increases the "coverage" or assumed risks of an insurance contract, thereby creating a new or different contract or policy. Under the circumstances presented we conclude the increase in premiums and benefits did not change the nature of the coverage or create a new policy subject to the disclosure regulation because it did not alter the type of risk Life Investors assumed under the policy – it only altered the amount of the benefits Life Investors was obligated to pay in the event a legitimate claim arose under the policy. For these reasons, the district court erred by determining Life Investors was estopped as a matter of law from refusing to honor the Johnson's claim. We therefore remand to the district court for further proceedings in accordance with this opinion on the Johnsons' claims against Life Investors, including their breach of contract claim.[9]

---

[9] The Johnsons contend they are entitled to summary judgment even if the district court erred by determining Life Investors was estopped from relying on the sickness exclusion to deny coverage. In support, the Johnsons argue the majority of jurisdictions, examining language in insurance contracts similar to the exclusionary language contained in their policy, refused to allow the insurance companies to rely on such language to deny coverage unless the preexisting illness constituted the "predominant cause" of the injury, or the preexisting illness "substantially contributed to the loss." In response, Life Investors argues the Utah Supreme Court would interpret the definition of "injury" in its policy to preclude coverage. Relying on *Winchester v. Prudential Life Ins. Co. of America*, 975 F.2d 1479 (10th Cir. 1992), Life Investors urges us to reverse the district court's denial of its cross-motion for summary judgment and rule the Johnsons are not entitled to coverage under the policy as a matter of law because they cannot prove Mr. Johnson's death resulted directly from an accident, independent of all other causes. We leave the determination of this issue to the district court on remand.

IV.   ATTORNEY FEE ISSUE

Finally, we address the Johnsons' contention the district court erred by denying them attorney fees.  In a diversity suit, the issue of attorney fees is considered a substantive matter and is controlled by state law.  *Jones v. Denver Post Corp*., 203 F.3d 748, 757 (10th Cir. 2000).  However, our standard of review is a matter of federal law and "[w]e review a district court's award of attorney fees for abuse of discretion.  The district court's factual findings are only reversed if clearly erroneous.  Legal conclusions and statutory analysis are reviewed de novo."  *Parks v. American Warrior, Inc*., 44 F.3d 889, 892 (10th Cir.1995) (citations omitted).

In Utah, the general rule is attorney fees are recoverable only if provided

---

After filing their brief with this Court, the Johnsons filed a motion for us to certify this issue to the Utah Supreme Court, contending certification is proper because the Utah courts have not yet determined "how, under state law, language limiting coverage under accidental death policies where an insured suffers a preexisting disease should be interpreted ...."  Life Investors filed no response to the Johnsons' motion to certify, but in its opposition to the Johnsons' motion for certification, Monumental argues this Court should interpret the "direct cause of loss, independent of all other causes" language as allowing it to deny coverage based on *Winchester* and without resorting to certification to the state court.  We deny the Motion for Certification without reaching its merits, and decline addressing Monumental's motion in opposition, leaving the Johnsons free to reassert their motion to certify in the district court on remand.

for in a contract at issue or by statute. *Occidental/Nebraska Fed. Sav. Bank v. Mehr*, 791 P.2d 217, 221 (Utah Ct. App. 1990). However, exceptions to this general rule exist. In an insurance contract dispute where the insured sues the insurer for breach of contract, attorney fees may be recovered as consequential damages for either a breach of the express terms of the contract or for a breach of the implied covenant of good faith and fair dealing. *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 468 (Utah 1996).

A.     Breach of the Express Terms of the Contract

An insured may recover attorney fees as consequential damages for the breach of an express term in the insurance contract if the fees "were reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made." *Billings*, 918 P.2d at 468 (quotation marks and citation omitted). Thus, in order to recover attorney fees as consequential damages flowing from a breach of express terms in the contracts, the Johnsons need to first show the companies breached the contracts. However, the district court never ruled on whether either company breached the express or implied terms of its contract. The district court instead found Monumental and Life Investors were estopped from relying on the sickness exclusions in their policies, and under the doctrine of estoppel, held the Johnsons could not recover attorney fees.

Given our and the district court's holdings that Monumental is estopped from denying coverage, we must examine the principles of estoppel to determine if attorney fees from Monumental are warranted in this case. To begin, estoppel does not operate to alter the terms of the contract as originally written. *See Perkins v. Great-West Life Assurance Co.*, 814 P.2d 1125, 1131 (Utah Ct. App. 1991). Rather, estoppel is normally asserted as a defense to a claim or right and does not create an independent cause of action. *See Raymond v. Halifax Hosp. Med. Ctr.*, 466 So.2d 253, 255 (Fla. Dist. Ct. App. 1985); *Lohse v. Atlantic Richfield Co.*, 389 N.W.2d 352, 357-58 (N.D. 1986); *see also General Motors*, 668 P.2d at 502 ("Although estoppel is usually a factual defense, it may be established as a matter of law to preclude an insurance company from relying on an exclusion in a credit life and accident policy."). Estoppel merely abates the insurer's right to defend against the insured's claim for breach of contract by relying on the language in its policy. *See id.* Moreover, unlike breach of contract where the award of attorney fees is reasonably contemplated at the time of the contract, *Billings*, 918 P.2d at 468, estoppel is not an independent cause of action like breach of contract, or a circumstance in which attorney fees are ever contemplated. It is not the same as breach of contract for the purpose of awarding attorney fees.

In applying this conclusion to the facts of this case, we note neither we nor the district court ever reached the issue of whether Monumental breached its contract with the Johnsons when holding Monumental is estopped as a matter of law from relying on the sickness exclusion. Therefore, the Johnsons are not entitled to attorney fees from Monumental under the theory Monumental breached the express terms of the contract. However, because we are reversing and remanding the district court's grant of summary judgment in favor of the Johnsons on their claim against Life Investors, we leave the determinations of whether Life Investors breached the express terms of its contract, and whether the Johnsons are entitled to attorney fees under Utah law, to the district court.

B.    Implied Covenant of Good Faith and Fair Dealing

The Johnsons alternatively assert an award of attorney fees is proper because the companies breached the implied covenant of good faith and fair dealing.[10] In *Beck v. Farmers Ins. Exch.*, 701 P.2d 795 (Utah 1985), the Utah

---

[10] The Johnsons assert because Life Investors did not answer their cross-appeal from the denial of attorney fees, it waived the issue. Although an appellant who chooses not to brief an issue may be deemed to waive the issue, *see Sheets v. Salt Lake County*, 45 F.3d 1383, 1390 (10th Cir.), *cert. denied*, 516 U.S. 817 (1995), this rule does not apply to appellees. The Johnsons, as the appellants, retain the burden to prove on appeal the trial court erred. If the insurance companies, as the appellees, choose not to defend the trial court's decision, this does not relieve the Johnsons of their burden to convince us of the district court's errors.

-22-

Supreme Court recognized attorney fees may be available as consequential damages flowing from a breach of the implied covenant of good faith and fair dealing by an insurance company. *Id.* at 801. Under *Beck*, an insurer may be found to breach the implied covenant of good faith and fair dealing if it fails to diligently investigate the facts underlying a claim, fairly evaluate the claim, or "act promptly and reasonably in rejecting or settling the claim." *Id.* "[T]he overriding requirement imposed by the implied covenant is that insurers act reasonably ... in dealing with their insureds." *Billings*, 918 P.2d at 465. However, "when an insured's claim is fairly debatable, the insurer is entitled to debate it and cannot be held to have breached the implied covenant if it chooses to do so." *Id.*

The Johnsons contend "[a]s a matter of law, the Companies could not have acted diligently, fairly or reasonably in rejecting the Johnsons' claims, as they violated applicable Utah Insurance Department Regulations by which they were bound, and denied the claims in the face of the Regulations." However, they cite no case where failing to comply with insurance regulations has been found to be the equivalent of failing to fairly evaluate a claim or act promptly and reasonably in rejecting the claim. Nor are we persuaded by the Johnsons' argument. Monumental's contention the disclosure regulation did not apply to its contract is

"fairly debatable" as the Utah courts have not ruled directly on the issue of whether the disability insurance regulations apply to accidental death policies. Obviously, because we agree with Life Investors that the regulation does not apply to its contract, we cannot hold Life Investors violated the covenant of good faith and fair dealing by asserting it is not estopped from relying on the sickness exclusion. However, on remand, the Johnsons might prove Life Investors breached the covenant of good faith and fair dealing on other grounds and that they are entitled to attorney fees in accordance with Utah law.

V.    CONCLUSION

For the foregoing reasons, and applying the principles for reviewing summary judgment determinations, we **REVERSE** the district court's order granting summary judgment to the Johnsons in their suit against Life Investors, and **REMAND** for further proceedings consistent with this opinion. As to the issue of attorney fees, we **REVERSE** and **REMAND** the district court's denial of attorney fees to the Johnsons from Life Investors for further proceedings consistent with this opinion. We **AFFIRM** the district court's grant of summary

judgment in favor of the Johnsons against Monumental and **AFFIRM** the denial of attorney fees to the Johnsons from Monumental.

        **Entered by the Court:**

        **WADE BRORBY**
        United States Circuit Judge