**Margaret VULCAN, Appellant,**

v.

**UNITED OF OMAHA LIFE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Feb. 10, 1998.
Filed July 28, 1998.

Anthony Dedola, Uniontown, for appellant.

John H. Williams, Jr., Pittsburgh, for appellee.

Before FORD ELLIOTT, MUSMANNO and HESTER, JJ.

FORD ELLIOTT, Judge:

Plaintiff/appellant Margaret Vulcan appeals from the order dated May 8, 1997, which granted preliminary objections in the nature of a demurrer filed by defendant United of Omaha Life Insurance Company ("United"). The court dismissed her amended complaint for breach of contract, breach of fiduciary duty, equitable estoppel, and counsel fees. We affirm in part, reverse in part, and remand.

The facts of the case are as follows. On June 1, 1981, appellant's husband, Raymond Vulcan, retired from the HBC Barge Company ("HBC Barge") after working there for 37 years. HBC Barge had in place a self-funded pension plan for salaried employees. One option available to Mr. Vulcan under this plan called for monthly benefit payments upon retirement "for ten years certain and life thereafter." Under this option, Mr. Vulcan would receive pension benefits until the end of his life; however, if he died before June 1, 1991 (*i.e.*, within ten years of retirement), payments would inure to his beneficiary until June 1, 1991. (R.R. 113a–114a, ¶ 6.03.) United contends that Mr. Vulcan elected this option; however, appellant does not concede this point. Mr. Vulcan received $722.22 per month in pension benefits until his death on July 20, 1984. Appellant, as Mr. Vulcan's beneficiary, continued to receive benefits of $722.22 per month under her husband's plan.

Effective September 18, 1987, HBC Barge closed out its pension fund and used the proceeds to purchase a service contract with United, a life insurance company. Pursuant to this contract, in exchange for a single premium of $2,235,378, United agreed to administer and pay annuity benefits, death benefits, and disability benefits to HBC Barge employees and their beneficiaries. (R.R. 203a, 209a.)

Shortly thereafter, United issued and appellant signed an annuity certificate, guaranteeing payments of $722.22 per month for "41 months and life thereafter" effective January 1, 1988. (R.R. 232a–236a.) By its terms, the certificate guarantees payments for the rest of appellant's natural life. At oral argument, United contended that the "life thereafter" provision of this annuity certificate was a clerical error, and that appellant is entitled to no greater benefits than those earned by her husband – *i.e.*, benefits until June 1, 1991. (*See also* United's brief at 38.) Appellant

does not concede that a clerical error took place.

On June 1, 1991, United discontinued payments to appellant on the ground that the "ten years certain" provision of Mr. Vulcan's plan lapsed. On June 19, 1991, United sent a letter to appellant explaining that pursuant to her husband's pension plan, she was no longer entitled to benefits after June 1, 1991, and that in fact she had been overpaid by one month. (R.R. 237a.)

On March 31, 1994, appellant filed suit against United under common-law breach of contract and detrimental reliance theories, seeking lifetime benefits under the annuity certificate she signed.

On October 11, 1996, the trial court granted summary judgment to United on the ground that appellant's claims were preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1101 *et seq.* ("ERISA"). The court granted summary judgment "without prejudice" to appellant's filing a proper ERISA claim; however, the court did not explicitly grant leave to amend. On November 12, 1996, appellant filed an amended complaint without leave of court or opposing counsel [1] asserting causes of action for breach of contract, breach of fiduciary duty, equitable estoppel, and "counsel fees," all under ERISA. (R.R. 194a–201a.)

On March 18, 1997, United filed preliminary objections in the nature of a demurrer which the court granted on May 7, 1997. The court first found that "Count I asserting a breach of contract theory and Count III asserting an equitable estoppel theory are essentially the same claims as were pled in the original complaint." (Trial court opinion, 5/7/97 at 5.) The court found that insofar as these claims were identical to the earlier claims, they should again be dismissed as being preempted by ERISA. *Id.* However, the court found that to the extent that these claims were "new," they were barred by applicable statutes of limitations. (*Id.* at 6–8.) [2]

---

1. Pursuant to Pa.R.Civ.P. 1033, amended complaints ordinarily may not be filed without leave of court or the opposing party. The trial court declined to dismiss the amended complaint on this basis. (Trial court opinion, 5/7/97 at 4.)

2. Briefly, the court found that (1) a four-year statute of limitations would apply to causes of action for breach of contract and equitable estoppel; (2) these claims expired on July 19, 1995, four years after appellant received United's letter notifying her that her benefits would be terminat-

The court then dismissed Count II for breach of fiduciary duty under ERISA because it, too, was barred by a statute of limitations. The court reasoned that (1) ERISA contains a specific three-year statute of limitations for breach of fiduciary duty (see 29 U.S.C. § 1113); (2) appellant's breach of fiduciary duty claim was new, and asserted for the first time in the amended complaint; (3) this claim expired on June 19, 1994, three years after appellant received United's letter that her benefits were terminated; and (4) since the amended complaint was filed November 12, 1996, the claim is untimely. Finally, the court dismissed Count IV for counsel fees because no substantive causes of action remained. This appeal followed.

"A preliminary objection in the nature of a demurrer tests the legal sufficiency of the complaint." *Smith v. Wagner*, 403 Pa.Super. 316, 320, 588 A.2d 1308, 1310 (1991). Our standard of review is well established:

> When reviewing an order granting preliminary objections in the nature of a demurrer, an appellate court applies the same standard employed by the trial court: all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purposes of review. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the demurrer.

*Jackson v. Garland*, 424 Pa.Super. 378, 381, 622 A.2d 969, 970 (1993) (citations omitted).

First, we cannot agree that Counts I and III in the amended complaint should be dismissed again as being preempted by ERISA insofar as they are identical to the allegations of the original complaint. The allegations in the amended complaint differ from the original complaint precisely in that the new claims *are pleaded under ERISA.* In fact, appellant pleaded these claims under ERISA because the court dismissed the original complaint without prejudice to file an ERISA

action. The fact that ERISA may apply to the amended claims is no longer grounds for dismissal. Rather, the analysis should have shifted to such matters as whether appellant properly pleaded these causes of action under ERISA, and if so, whether a state court has jurisdiction to hear the claims. This is what we now set out to do. In doing so, we bear in mind the following principles:

> Whenever a state court exercises jurisdiction over a matter pertaining to employee benefits, that court must first resolve whether to apply state law or ERISA. [*Ingersoll–Rand v. McClendon*, 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).]
>
> . . . .
>
> When state courts entertain federal causes of action, the parties' rights and the defenses which may be raised are defined by federal law. *Murtagh v. County of Berks*, 535 Pa. 50, 57–58, 634 A.2d 179, 183 (1993), *cert. denied,* [511] U.S. [1017], 114 S.Ct. 1397, 128 L.Ed.2d 71 (1994) (citing *Howlett v. Rose*, 496 U.S. 356, 375, 110 S.Ct. 2430, 2442, 110 L.Ed.2d 332, 353 (1990)). The reason for this rule is to ensure that the outcome of federal questions will be the same, whether they are decided in a state or federal forum. *Id.* We note that the decisions of the federal district courts and courts of appeal, including those of the Third Circuit Court of Appeals, are not binding on Pennsylvania courts, even when a federal question is involved. [Citations omitted.] Although the decisions of the federal courts lower than the United States Supreme Court are not binding on Pennsylvania courts, they do have a persuasive authority with regard to federal questions. *Commonwealth v. Giffin*, 407 Pa.Super. 15, 26, 595 A.2d 101, 107 (1991); *Hangelias v. Dawson*, 158 Pa.Super. 370, 374, 45 A.2d 392, 394 (1946). When possible, it is appropriate for the Superior Court of Pennsylvania to follow the Third Circuit's ruling on federal questions to which the United States Supreme Court has not yet provided the ultimate

---

ed; and (3) because the amended complaint was filed November 12, 1996, the claims were untimely.

answer. *Nobers v. Crucible, Inc.*, 431 Pa.Super. 398, 406, 636 A.2d 1146, 1150, *appeal denied*, 537 Pa. 665, 644 A.2d 1201 (1994), *cert. denied*, [516] U.S. [914], 116 S.Ct. 301, 133 L.Ed.2d 206 (1995).

*Chiropractic Nutritional Assocs. v. Empire Blue Cross & Blue Shield*, 447 Pa.Super. 436, 445, 669 A.2d 975, 979–980 (1995).

We now turn to the merits of Count I for breach of contract. Appellant avers the following in the amended complaint. First, the entire amended complaint "arises under [ERISA], and more particularly § 1132(a)(1)(b) and 1132(a)(9) thereof." (R.R. 194a, ¶¶ 3, 34.)[3] HBC Barge purchased an annuity policy for Raymond Vulcan "through [United]" (R.R. 195a, ¶ 10), and he received benefits thereunder until his death.[4] Appellant, as his beneficiary, continued to receive benefits. (R.R. 196a, ¶ 14.) After terminating its pension plan for salaried employees, HBC Barge purchased from United a group annuity contract effective September 19, 1987, pursuant to which appellant received an annuity certificate. (*Id.* at ¶¶ 15–16). The certificate stated that appellant would receive benefits for 41 months certain and life thereafter. (R.R. 196a, ¶¶ 17–19). Since June 1991, United has failed to make payments as provided by the annuity certificate. (R.R. 197a, ¶ 23.) Count I avers that United "has breached and violated the terms and conditions of the contract such that [appellant] is entitled to damages of $722.22 per month from June, 1991 through the present and continuing until the time of her death." (*Id.* at ¶ 25.) In her prayer for relief, appellant seeks those damages as well as counsel fees, costs, and such other relief as the court may deem appropriate under ERISA. (R.R. 200a–201a, ¶¶ (a)–(d).)

Appellant's first argument is that the court erred from the beginning in holding that ERISA applies to this cause of action. To determine whether appellant is correct, we must examine a number of ERISA's provisions.

First, ERISA's "preemption clause" states that ERISA "supersedes any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Appellant concedes that generally, her cause of action relates to an employee benefit plan and thus would be preempted absent any other provision.

However, ERISA's "savings clause" states that "except as provided in subparagraph (B) [the "deemer clause"], nothing in this subchapter shall be construed to relieve any person from any law of any state which regulates insurance, banking or securities." 29 U.S.C. § 1144(b)(2)(A). The deemer clause, 29 U.S.C. § 1144(b)(2)(B), states in relevant part that "Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance ... for purposes of any law of any state purporting to regulate insurance companies...." This provision prevents states from simply declaring (or deeming) that self-funded pension plans are "in the business of insurance," and therefore (1) subject to state insurance laws and (2) not subject to ERISA. *See generally FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990).

■ Appellant argues that this action falls under the savings clause, and thus ERISA does not apply. (Appellant's brief at 13.) Specifically, "since Pennsylvania Insurance Law regulates the insurance industry, and regulates [United] directly, ERISA is not applicable and does not pre-empt the state law." (*Id.* at 14.) Also, according to appellant, federal case law draws a distinction between "self-funded plans" and "insured plans." It is undisputed that before it contracted with United, HBC Barge ran a self-funded plan, which was governed by ERISA. However, when HBC Barge elected to pur-

---

3. These sections are discussed further *infra*.

4. This allegation appears to be incorrect, in that HBC Barge did not enter into a contractual relationship with United until 1987, three years after Raymond Vulcan's death. It is undisputed that HBC Barge did have a self-funded pension plan before 1987. Also, the complaint alleges that Raymond Vulcan retired in 1982. (R.R. 195a at ¶¶ 7, 13.) The record reflects, and the parties do not dispute, that Mr. Vulcan retired in June 1981.

chase a services contract whereby United, an insurance company, administered and paid benefits under the plan, the plan became an "insured plan," which appellant argues is removed from ERISA's purview by the savings clause. (Appellant's brief at 15–20, citing, *inter alia, Seymour v. Blue Cross/Blue Shield*, 988 F.2d 1020 (10th Cir.1993), and *Winchester v. Prudential Life Ins. Co.*, 975 F.2d 1479 (10th Cir.1992).)

We disagree, and find that Count I does not fall under the savings clause. We find that this issue is substantially controlled by the United States Supreme Court's reasoning in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). In that case, plaintiff Dedeaux's employer had purchased a group employee long-term disability insurance policy from Pilot Life Insurance Company ("Pilot"). Pilot administered the plan and decided eligibility for benefits. Dedeaux brought a common law action against Pilot alleging "tortious breach of contract" under Mississippi law for failing to pay benefits allegedly due to him.[5] Pilot argued that this claim was pre-empted by ERISA. Dedeaux countered that ERISA's savings clause applied because Mississippi's common law governing bad faith breach of contract is a law which "regulates insurance." *Id.* at 48, 107 S.Ct. 1549.

■ The Supreme Court disagreed. First, it found that when determining whether a state law [6] 'regulates insurance,' a court should first take "a common-sense view" of the language of the savings clause itself. *Id.* at 48, 107 S.Ct. 1549, *citing Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 740, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). The Court found that "a common-sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but *must be specifi-*

*cally directed toward that industry." Pilot Life, supra* at 50, 107 S.Ct. 1549, emphasis added. Next, the Court found that even though the common-law tort of bad faith breach of contract developed through case law involving an insurer's arbitrary refusal to pay claims, the law is generally applicable to bad-faith breaches of *all* types of contracts, not just insurance contracts; moreover, "the roots of this law are firmly planted in the general principles of Mississippi tort and contract law." *Id.* Similarly, we find that appellant's breach of contract action is firmly rooted in traditional Pennsylvania common law. Appellant has not sought relief under any statutory or common law specifically directed toward insurance companies. Rather, common-law breach of contract claims simply have a general impact on insurance companies, just as they have a general impact on all other individuals and businesses.

Next, the Supreme Court found that in interpreting the savings clause, a court should examine case law interpreting the phrase "business of insurance" under the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq.*[7] Specifically, we should consider "whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." *Id.* at 48–49, 107 S.Ct. 1549 (citation omitted).

As in *Pilot Life*, we find that these factors militate against finding that appellant's claim is governed by state laws which "regulate insurance." First, common law claims for payment of benefits do not have the effect of spreading policyholder risk. (*Id.* at 50, 107 S.Ct. 1549.) Second, while such claims affect the insurer-insured relationship, they are "no more 'integral' to the insurer-insured relationship than any State's general contract

---

5. Dedeaux sued Pilot in federal court on diversity grounds, but sought relief under Mississippi common law. Dedeaux also brought claims for breach of fiduciary duty and fraud in the inducement, but these claims are not relevant here.

6. State case law is subject to ERISA preemption. *See* 29 U.S.C. § 1144(c)(1) ("the term 'state law' includes all laws, decisions, rules, regulations, or

other State action having the effect of law, of any State"); *Winchester, supra* at 1484 n. 5.

7. This act provides, in relevant part, "the business of insurance, and every person engaged therein, shall be subject to the laws of the Several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a).

law is integral to a contract made in that State." (*Id.* at 51, 107 S.Ct. 1549.) Finally, as noted above, breach of contract claims are not limited to claims against insurance companies; rather, they are generally enforceable by any two contracting parties.

We must also reject appellant's argument that common law breach of contract claims fall under the savings clause simply because the defendant is an insurance company, which is regulated extensively by Pennsylvania law. A plain reading of the savings clause shows that only certain types of *laws,* not certain types of *defendants,* are saved from preemption. As noted above, the "law" at issue is not directed at insurance companies, and thus is not exempt from ERISA's preemptive sweep. We also note that the defendant in *Pilot Life* was an insurance company subject to state insurance laws; if that were the dispositive factor, much of the Supreme Court's analysis in *Pilot Life* would have been superfluous.

Cases cited by appellant to the contrary are inapposite. For example, in *FMC Corp., supra,* the United States Supreme Court held that ERISA preempts § 1720 of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. (1987), a Pennsylvania statute which would have precluded health insurance plans from seeking reimbursement for benefits paid to a claimant who receives compensation from a third-party tortfeasor. The critical question in that case was *not* whether § 1720 was a law which "regulates insurance" for purposes of the savings clause. Rather, the question was whether the deemer clause applied to § 1720. While *FMC Corp.* distinguishes between self-funded plans and insured plans, and notes that insurance companies administering insured plans are "not relieved from state insurance regulation," this discussion leaves open the question of whether common law actions for breach of contract and equitable estoppel constitute "state insurance regulation." The deemer clause is not at issue in our case; it only comes into play *after* the court has determined whether the law in question is one which regulates insurance. Similarly, we are not persuaded by *Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293 (7th Cir.1993),

*cert. denied,* 510 U.S. 916, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993), *Seymour, supra* or *Winchester, supra.* These cases ultimately follow *FMC Corp.* in standing for the proposition that

> Because a self-funded plan may not be deemed an insurance company, the saving clause does not save state insurance laws from preemption when applied to such a plan directly. On the other hand, the saving clause does save state insurance laws from preemption when they are applied to an insurance policy purchased by an ERISA plan. Thus, whether ERISA preempts a given state insurance law depends on whether the plan in question is self-funded or insured.

*Winchester, supra* at 1484 (Utah common-law decisions interpreting the phrase "accidental bodily injury" in insurance policies are saved from preemption, and are not subject to the deemer clause because the plan was insured rather than self-funded); *see also Seymour, supra* at 1023 (Utah statute governing unilateral modification of insurance contracts is saved from preemption, and is not subject to the deemer clause because plan was insured); *Cutting, supra* at 1295 (Wisconsin law setting limits on a plan's right of subrogation is preempted by ERISA because the plan was self-funded). These holdings follow from an analysis of ERISA's *deemer* clause, not the savings clause. Again, as with *FMC Corp.,* nothing in *Cutting, Seymour,* or *Winchester* speaks to the question of whether appellant's claims are in the first instance a "state insurance law" for purposes of the savings clause. For the reasons set forth above, we find that the savings clause does not apply, and that appellant's breach of contract claim is preempted by ERISA.

The mere fact that ERISA applies does not necessarily mean that appellant's claims must be dismissed. Rather, ERISA's civil enforcement provisions allow a "participant or beneficiary to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Next, state courts have con-

current jurisdiction with federal courts over actions brought under § 1132(a)(1)(B). 29 U.S.C. § 1132(e)(1); *Chiropractic Nutritional, supra* at 441–43, 669 A.2d at 978. So long as appellant seeks "to recover benefits due to [her] under the terms of [her] plan, or to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan," appellant may bring a breach of contract claim under ERISA in state court.

■■■ The parties dispute whether an ERISA plan currently exists. Appellant contends that a "three-tier" ERISA plan exists, consisting of (1) the original, terminated self-funded HBC Barge plan; (2) the current contract between HBC Barge and United; and (3) the annuity certificate. (Appellant's brief at 25.) United does not directly attack this argument. Rather, it contends that the annuity certificate is not a part of the original HBC Barge plan, nor an amendment thereto, nor a "summary plan description" of the original plan. (United's brief at 25–31.) United implies that appellant can only vindicate the terms of the annuity certificate if it has one of these connections to the original plan. From this, United further reasons that appellant impermissibly seeks monetary damages not provided for by "the plan." (*Id.* at 16–22.) We disagree. The mere fact that the annuity certificate is not part of an *old, discontinued* plan does not prevent it from being part of a *new* pension plan under ERISA. Moreover, United presents no compelling legal argument that the annuity certificate is not part of a new ERISA plan. For the following reasons, we find that the annuity certificate, in conjunction with the HBC Barge–United contract, constitutes a new ERISA plan; therefore, appellant may seek to enforce the terms of the annuity certificate under ERISA.

■ We begin by looking to ERISA's definition of a "plan." According to 29 U.S.C. § 1002(3), an "employee benefit plan" is defined as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both...." In turn, "employee pension benefit plan" and "pension plan" are defined in relevant part as:

*any* plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that *by its express terms or as a result of surrounding circumstances* such plan, fund, or program ... provides retirement income to employees....

29 U.S.C. § 1002(2)(A) (emphasis added). In the Third Circuit, "[w]hether a plan exists within the meaning of ERISA is a question of fact, to be answered in light of all the surrounding facts and circumstances and from the point of view of a reasonable person." *Deibler v. United Food & Commercial Workers' Local Union 23*, 973 F.2d 206, 209 (3rd Cir.1992) (internal quotation omitted). Other decisions from the Third Circuit are also helpful in determining when an ERISA plan exists:

> [W]e have ruled that a plan need not be written, *Deibler v. United Food & Comm. Workers' Local Union 23*, 973 F.2d 206, 209 (3rd Cir.1992), and we have adopted the test developed in *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982) (*en banc*), to determine whether informal written or oral communications ... constitute a plan. *See Deibler*, 973 F.2d at 209, *Henglein v. Informal Plan for Plant Shutdown Benefits*, 974 F.2d 391, 399–400 (3d Cir.1992). Under that test, "a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Donovan*, 688 F.2d at 1373.

*Smith v. Hartford Insurance Group*, 6 F.3d 131, 135 (3rd Cir.1993). One important factor in determining the existence of an ERISA plan is whether an employee would perceive an ongoing commitment to provide benefits. *Henglein, supra* at 400. A plan is covered by ERISA only if it implicates a continuing or ongoing administrative scheme or practice to provide benefits to employees. *Belanger v. Wyman–Gordon Co.*, 71 F.3d 451, 454 (1st Cir.1995), citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 12, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).

The parties have furnished, and we have found, no authority explicitly deciding whether a contract between an employer and an insurance company to provide annuity benefits constitutes an ERISA pension plan.[8] However, in the context of health benefits provided by an insurance company, one Pennsylvania federal court wrote:

> The Third Circuit does not appear to have expressly addressed the question of whether an employer may create an employee benefit plan under ERISA by merely purchasing health insurance coverage for its employees. There is no reason to believe, however, that the Third Circuit would not, at a minimum, adopt the position, which is shared by all the courts of appeals that have addressed this issue, that purchase of health insurance coverage *is evidence of the existence of a plan.*

*Russo v. Abington Mem. Hosp.*, 881 F.Supp. 177, 180 (E.D.Pa.1995) (emphasis added). Evidence that an employer has "established or maintained" a plan under ERISA grows stronger if the policy covers a class of employees, and if "the employer's purchase of the policy is an expressed intention by the employer to provide benefits on a regular and long-term basis." *Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 464 (10th Cir.1997) (citations omitted); *see also Deibler, supra* at 209; *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 236 (5th Cir.1995), *cert. denied,* 516 U.S. 1174, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996) (finding ERISA welfare benefit plan where insurer paid health insurance premiums and reasonable person could determine benefits, class of beneficiaries, and procedures for receiving benefits). The fact that an insurer or other third party takes responsibility for operating the plan does not prevent the plan from falling under ERISA. *Gaylor, supra* at 465.

Under the circumstances presented here, we find that the annuity certificate constitutes part of an ERISA plan. First, the certificate, by its terms, awards "monthly annuity payments" to appellant in the same amount as she had received each month under her husband's pension plan. (R.R. 232a, annexed to amended complaint as Exhibit "B".) With the exception of the "life thereafter" clause, the annuity certificate would have provided annuity payments for substantially the same length of time as appellant would have expected to receive under the "ten years certain" option in her husband's pension plan. An entry on the certificate, titled "Plan," reads: "Retirement Plan for Salaried Employees of HBC Barge, Inc." (*Id.*)

Turning to the factors outlined in *Smith, supra,* we find that a reasonable person could ascertain the intended benefits ($722.22 per month for 41 months and life thereafter effective January 1, 1988), a class of intended beneficiaries (former participants in the HBC Barge Retirement Plan and their beneficiaries), the source of financing (United; specifically, its "Group Pension Division"—*see* R.R. 235a), and the procedures for receiving benefits (by signing the certificate, the annuitant will receive monthly annuity payments). Next, the HBC Barge–United contract implicates an ongoing administrative scheme to provide benefits to these participants (as well as future retirees and other beneficiaries) over a period of years. (R.R. 218a–229a.) *Fort Halifax, supra.* Finally, it is undisputed that HBC Barge not only paid the entire premium for these benefits, but did so out of the proceeds of its *pension fund.* Plainly, the contract between HBC Barge and United was designed to substitute United for HBC Barge as administrator and payor of pension benefits for HBC employees and their beneficiaries. (R.R. 214a–215a, United – HBC Barge Contract, § 5.05, 5.07.)[9] From these facts, a reasonable person could conclude

---

8. One district court case presenting analogous facts, *Thompson v. Prudential Ins. Co. of America,* 795 F.Supp. 1337 (D.N.J.1992), *aff'd,* 993 F.2d 226 (3rd Cir.1993), turned on whether the employee was "covered" within the meaning of 29 C.F.R. § 2510.3–3(b). That issue is not before this court.

9. We also note with interest that in its June 19, 1991 letter to appellant indicating that benefits would be discontinued, United wrote, "We want to assure you that you have received all plan benefits to which you were entitled." (R.R. 237a, attached to amended complaint as Exhibit "C".)

that HBC Barge "established" this plan as an ongoing employment benefit. We find sufficient evidence of an ERISA plan in the terms of the annuity certificate and the HBC–United contract which brought about the certificate.

We further hold that appellant's breach of contract claim is cognizable under ERISA. Paragraph 25 of the amended complaint asserts that she is seeking nothing more than what she believes is due to her under the terms of the plan – namely, "$722.22 per month from June, 1991 through the present and continuing until the time of her death." (R.R. 197a., ¶ 25; see also R.R. 200a–201a, Request for Relief, ¶¶ (a),(b).) As noted above, appellant can seek this remedy under § 1132(a)(1)(B) of ERISA. For all of the above reasons, we reverse the trial court's order dismissing Count I for breach of contract and reinstate that count.[10]

Count II for breach of fiduciary duty under ERISA is entirely new, first set forth in the amended complaint. Appellant asserted no analogous common-law breach of fiduciary duty claim in the original complaint. In Count II, appellant alleges that United breached its fiduciary duty to appellant "by misrepresenting the terms of the annuity policy," and by refusing to pay benefits since June 1991. (R.R. 198a–199a, ¶¶ 31–33.) Appellant does not indicate within Count II what specific relief she seeks.

 We affirm the trial court's dismissal of this count because state courts lack jurisdiction to hear breach of fiduciary duty claims under ERISA. ERISA authorizes a state court to hear only two types of ERISA claims: first, claims arising under section 1132(a)(1)(B) to enforce the terms of the plan or to recover benefits under the terms of the plan; second, claims under section 1132(a)(7) by a state to enforce compliance with qualified medical child support orders. *See* 29 U.S.C. § 1132(e)(1). Federal courts have exclusive jurisdiction over all other ERISA claims. *Id.* For our purposes, these provisions establish that *in state court*, appellant can receive no more than compensatory relief; *i.e.*, what she is entitled to under the terms of the plan. Appellant has already sought this remedy in Count I for breach of contract. Compensatory relief is not available for breach of fiduciary duty; only equitable relief is available. *McLeod v. Oregon Lithoprint*, 102 F.3d 376 (9th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1823, 137 L.Ed.2d 1030 (1997). Moreover, breach of fiduciary duty claims cannot be pursued through § 1132(a)(1)(B). *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491, 1500 (3rd Cir.1994), *cert. denied*, 513 U.S. 1149, 115 S.Ct. 1099, 130 L.Ed.2d 1067 (1995). Remedies *beyond* the terms of the plan, such as appropriate equitable relief (*see* § 1132(a)(3)(B)) or civil penalties for breach of fiduciary duty (*see* §§ 1132(a)(9), 1132(*l*)) are available only in federal court.

 Even if a state court had jurisdiction over this claim, it would be dismissed as untimely. It is undisputed that this cause of action accrued on June 19, 1991. Pursuant to 29 U.S.C. § 1113, appellant was required to assert this claim within three years – *i.e.*, on or before June 19, 1994.[11] Appellant does

---

**10.** We need not address the issue of whether Count I is barred by the statute of limitations. It is undisputed that this claim was timely when first asserted on March 31, 1994. The court dismissed this timely claim and ordered appellant to file new claims under ERISA. After appellant did so, the court invoked the statute of limitations. United recognizes, and we agree, that "because this appeal brings before this Court the correctness of the original determination that [appellant's] theories are preempted, whether the Amended Complaint complied with the statute of limitations on those same claims is now rendered moot; [appellant] either set forth a viable cause of action under these theories or she did not." (United's brief at 43 n.13.) In short, United has conceded that Count I should not be

dismissed on statute of limitations grounds. We also need not decide to what extent, if any, the old HBC Barge plan is incorporated into the new ERISA plan. This issue is best resolved through further litigation on remand.

**11.** ERISA's statute of limitations on breach of fiduciary duty claims, 29 U.S.C. § 1113, states:

**§ 1113. Limitation of actions**

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission,

not appear to dispute these facts. However, she does argue that "the filing of [the] original Complaint [on March 31, 1994] tolls that statute of limitations" (appellant's brief at 27), and that this court should invoke ERISA's broad remedial scope to find her claim preserved.

We disagree with both propositions. First, appellant cites no authority for the proposition that filing the original complaint, which contained no breach of fiduciary duty claim, tolls ERISA's statute of limitations. Next, appellant could have amended her complaint at any time on or before June 19, 1994, to assert a breach of fiduciary duty claim, whether under ERISA or otherwise. Indeed, appellant could have *attempted* to assert a breach of fiduciary duty claim not sounding in ERISA at any time before June 19, 1995—when Pennsylvania's four-year statute of limitations on common-law breach of fiduciary duty claims expired. Instead, appellant first sought relief for breach of fiduciary duty on November 12, 1996, after both statutes of limitation had expired. Next, appellant's sole authority with respect to the broad remedial purposes of ERISA is inapposite. *Starr v. JCI Data Processing, Inc.*, 767 F.Supp. 633, 638–39 (D.N.J.1991) (fact that certain fiduciary duty claims are barred by § 1113 will not bar other, continuing breaches of fiduciary duty, nor will it bar non-fiduciary claims). For these reasons, we affirm the trial court's decision with respect to Count II of the amended complaint.

■ We now turn to the merits of Count III for equitable estoppel.[12] Count III avers the following. By assuming all contractual obligations for HBC employees' retirement benefits, United stands in a fiduciary relationship with appellant. (R.R. 199a, ¶ 35.) Under the circumstances, "a contract of in-

surance was issued to her as part of her husband's pension benefits with benefits payable to her as set forth in the annuity certificate." (*Id.* at ¶ 39.) The provisions of the annuity certificate are material representations. (*Id.* at ¶ 36.) Appellant reasonably relied to her detriment on the "life thereafter" provision by failing to make alternate provisions for savings and retirement. (*Id.* at ¶ 38.) United is now equitably estopped *from altering the terms of the certificate.* (R.R. 200a, ¶ 41, emphasis added). Count III also avers that United is subject to sanctions under 29 U.S.C. § 1109(a). (*Id.* at ¶ 40.) Aside from the sanctions provision, appellant does not set forth a separate prayer for relief under this count. Rather, in the general prayer for relief she seeks "back pay" ($722.22 per month from June 1991 to the present, with interest); "front pay" ($722.22 per month until her death), attorneys' fees and costs, and any other appropriate relief under ERISA. (R.R. 200a–201a, ¶¶ (a)–(d).) We read this cause of action to allege that even if (1) the ERISA plan at issue does not authorize lifetime benefits, (2) the certificate announcing lifetime benefits is erroneous and can be reformed, and (3) appellant is not entitled to recover on a breach of contract theory, her reasonable reliance on the certificate's terms still entitles her to benefits under the circumstances.

First, for the reasons set forth above with respect to appellant's breach of contract claim, we find that Count III is preempted by ERISA. Appellant concedes, and we agree, that Count III is plainly related to an ERISA plan, and thus falls under ERISA's broad preemption clause. Next, Count III is not saved from preemption by the savings clause, because common-law equitable estoppel claims are no more directed at the insur-

the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

**12.** Appellant does not explain how Count III, as alleged, states a cause of action under ERISA, or

even whether equitable estoppel claims are generally cognizable under ERISA. Rather, she argues that state courts have concurrent jurisdiction over the claim (brief at 22); that federal common law applies (*Id.* at 23); and this count should not have been dismissed on statute of limitations grounds (*Id.* at 26–35). However, we decline to find waiver because the trial court did not address the merits of Count III (except to say that ERISA applies thereto) and because United has adequately briefed the issue.

ance industry than are common-law breach of contract claims. *See Pilot Life, supra.*

The two primary questions are whether ERISA allows for equitable estoppel claims, and if so, whether a Pennsylvania state court has jurisdiction to hear the claim. The Third Circuit Court of Appeals has held that equitable estoppel claims are cognizable under § 1132(a)(3)(B)(ii) of ERISA, which states: "A civil action may be brought ... by a participant, beneficiary, or fiduciary ... to obtain other appropriate equitable relief ... to enforce any provisions of this subchapter or the terms of the plan." *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3rd Cir.1994) (beneficiary's equitable estoppel claim to recover $150,000 in accidental death benefits cognizable under ERISA where employer, *inter alia*, told beneficiary that she was entitled to such benefits and then recanted), citing 29 U.S.C. § 1132(a)(3)(B)(ii).

 We affirm the trial court's dismissal of Count III, because Pennsylvania state courts lack jurisdiction to hear it. As noted above, for our purposes ERISA's jurisdiction provision allows state courts to hear only claims arising under 29 U.S.C. § 1132(a)(1)(B). *See* 29 U.S.C. § 1132(e)(1). Equitable relief, in the form of benefits not specifically provided for by the terms of an ERISA plan, cannot be recovered under § 1132(a)(1)(B). *Curcio, supra* at 235; *Haberern, supra* at 1500. Because a federal district court is the only arena in which appellant may pursue an equitable estoppel claim, we affirm the trial court's dismissal of Count III.

Finally, we reverse the court's dismissal of Count IV for attorneys' fees. We recognize that a "cause of action" for attorney's fees is not a freestanding legal claim, but rather a request for relief adjunct to a substantive claim. This technical defect will not bar appellant from seeking attorneys' fees under ERISA. Section 1132(g) of ERISA authorizes the court, in its discretion, to allow reasonable attorneys' fees and costs of suit to plaintiffs such as appellant. We cannot declare as a matter of law that appellant will not be eligible for such fees if she prevails at the conclusion of this litigation.

In conclusion, we reverse the trial court's decision with respect to Count I for breach of contract and Count IV for attorneys' fees. These counts are reinstated. We affirm the court's dismissal of Count II for breach of fiduciary duty and Count III for equitable estoppel. We express no opinion as to the substantive merits of appellant's breach of contract claim under ERISA; we merely hold that it may go forward as alleged.

Affirmed in part, reversed in part, and remanded. Jurisdiction relinquished.